# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Kenneth W. Briere,

                Plaintiff,        Case No. 15-cv-10051

v.                            Judith E. Levy
                               United States District Judge

City of Allen Park,

                            Mag. Judge Mona K. Majzoub
                Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [19]

Kenneth Briere brought suit against the City of Allen Park, claiming discrimination based on a shoulder injury in violation of the Americans with Disabilities Act, retaliation for complaining about the purported discrimination and for testifying against the City in a different case, and retaliation for filing a charge of discrimination with the Equal Employment Opportunity Commission. Defendant filed a motion for summary judgment on February 2, 2016, and after the motion was fully briefed, the Court held a hearing. For the reasons set forth below, defendant's motion is granted.

## I. Background

Plaintiff Kenneth Briere began working for defendant City of Allen Park in 1998, and worked there in park maintenance until he was terminated in mid-August 2014. (Dkt. 19-2 at 44.) In 2005, he injured his shoulder on the job and was placed on permanent medical work restrictions. (Id. at 64.) His restrictions included no lifting over fifty pounds, no reaching above shoulder height, and no repetitive use of his right arm. (Id.)

In January 2012, plaintiff agreed to testify on behalf of Cassandra Parks in her Title VII discrimination lawsuit against the City of Allen Park. (*See* id. at 9.) Relatedly, plaintiff provides an audio recording of a purported conversation with his supervisor of that time, garage foreman John Mensinger, in which Mensinger states that plaintiff would "get harassed on the job" unless he fabricated testimony that was helpful to the city. (Dkt. 22-1.) According to plaintiff, Mensinger's statement evidenced that defendant "was going to retaliate against [him] because of his testimony which was adverse to the City of Allen Park." (Dkt. 22 at 18.) He testified on behalf of Cassandra Parks anyway.

2

In May 2012, plaintiff had a verbal and physical "altercation" with Mensinger because of his testimony on behalf of Cassandra Parks, in which there was some "chest[-]" and "belly-bumping."  (Id. at 10, 18-19; *see also* Dkt. 19 at 9-10.)  Plaintiff reported the incident to defendant's management and filed a criminal assault complaint.  (Dkt. 22 at 19.) Human Resources Director Donald Wood issued an initial memo directing that Mensinger was to have no contact with plaintiff while the investigation was ongoing unless necessary.  (Dkt. 19-2 at 20; Dkt. 19-4 at 2-3.)  Ultimately, after plaintiff withdrew the criminal complaint, defendant "removed any supervisory duties to [*sic*] Mensinger over [plaintiff]," and plaintiff was to "report directly to Doug Morton, Director of Public Services."  (Dkt. 19-5 at 2-3.)

In January 2014, a foreman position opened in the Department of Public Service and Water Department.  (*See* Dkt. 19-6.)  There is conflicting evidence, but in the light most favorable to plaintiff, the job listing was posted everywhere except for plaintiff's work area.[1]  (Dkt. 19-2 at 13.)  As a result, plaintiff testified that he was unaware of the

---

[1] Defendant makes much of the fact that because it was not a union position, the City was not obligated to post the job opening in plaintiff's work area (see Dkt. 19 at 11, 16, 27, 29), but this is irrelevant to whether defendant had an unlawful motive when it did not post the information in that work area.

3

opening until the application period closed.  (*See* id.)  Plaintiff testified that he met with Matt Dohring, the union president, and Kyle Major, the union steward, because he wanted to have the opportunity to interview for the job.  (Id.)  According to plaintiff, union steward Major later told plaintiff that HR Director Wood had told him that plaintiff would be allowed to submit his application late and would be interviewed for the foreman position.  (Id.)  Plaintiff submitted an application, but DPS Director Morton, who was in charge of hiring for the position, declined to interview plaintiff due to his untimely application.  (Id. at 13-14.)

Defendant presents unrefuted evidence that in early 2014, City administrators decided to eliminate plaintiff's job.  (Dkt. 19-8 at 5-6.)  According to defendant, City of Allen Park Emergency Manager Joyce Parker wanted to eliminate all full-time employees in plaintiff's department except for the director, but HR Director Wood advised her that plaintiff was a member of the union and had "bumping rights" under the union's collective bargaining agreement.  (Dkt. 19 at 13; *see* Dkt. 19-8 at 13.)   Plaintiff was then placed in a position as a maintenance employee at City Hall, with the same pay and job duties,

but from the hours of 7:30 AM to 4:00 PM rather than the hours of 6:00 AM to 2:30 PM, which he had worked before. (Dkt. 19-2 at 19.)

On June 26, 2014, after the decision to transfer plaintiff to City Hall, plaintiff filed a charge of discrimination with the EEOC, alleging that he was "denied a promotion" to the Water Department Foreman position because of his shoulder disability. (Dkt. 19-13.) On July 1, 2014, plaintiff reported to City Hall for work. (Dkt. 19-2 at 16.) He testified that there was no one present except for Mensinger and that he feared for his safety. (Id.) Plaintiff also testified that he met Emergency Manager Parker for the first time later that day, when he introduced himself to her and expressed his safety concerns. (*See* id. at 16-17.) A few days later, plaintiff went on a pre-approved vacation that lasted approximately one month. (Id. at 25.)

While on vacation, plaintiff emailed City Administrator Karen Folks regarding his fear of having to work in proximity to Mensinger, stating that he believed the City was attempting to "force [him] to quit [his] job." (Dkt. 19-14 at 2-3.) There were several communications over the next month, and when plaintiff failed to report to work on July 31, 2014, after his vacation, City Administrator Folks advised him that he

5

was required to report to work and that they could discuss his safety concerns in person. (Dkt. 19-17 at 2-4.) Plaintiff requested that they first speak on the phone about his concerns, but City Administrator Folks advised him that if he did not return to work to meet in person, it would be considered job abandonment or resignation. (*See* id.) Plaintiff still refused to return to work, and he was terminated on August 14, 2014. (*See* Dkt. 19-19 at 2.)

## II. Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir. 2002)).

6

## III.   Analysis

Plaintiff brings three claims.  First, plaintiff claims that defendant did not post the announcement or interview him for a job opening for Water Department Foreman because of his shoulder disability, in violation of the ADA.  Second, plaintiff claims that defendant retaliated against him for testifying in Cassandra Parks' case and also for complaining to defendant that it had discriminated against him based on his disability.  Third, plaintiff claims that defendant terminated him in retaliation for filing a charge of discrimination with the EEOC.

### *a. Disability discrimination claim*

Plaintiff claims that defendant discriminated against him based on his shoulder disability when defendant did not to post the announcement or interview him for the Water Department Foreman position.    Defendant  argues  that  plaintiff  cannot  establish discrimination under the ADA because there is no direct evidence of discrimination.  (Dkt. 19 at 25.)  Plaintiff responds that he can establish a direct-evidence, mixed-motive claim of disability discrimination.  (Dkt. 22 at 12-13.)   Defendant replies that plaintiff "has failed to present

7

sufficient evidence for a reasonable jury to conclude his disability was a motivating factor for any of the City's actions." (Dkt. 23 at 2.)

Neither party addresses whether a mixed-motive claim of disability discrimination is cognizable under the ADA. Such a claim is not. *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) ("The ADEA and the ADA bar discrimination 'because of' an employee's age or disability, meaning that they prohibit discrimination that is a 'but-for cause of the employer's adverse decision.'") (quoting *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176 (2009)). Because plaintiff essentially concedes that he has only "pled a mixed motive claim" of direct discrimination (Dkt. 22 at 12-13), plaintiff must establish a *prima facie* case under the burden-shifting framework as set forth in the relevant case law—namely, the Supreme Court's *McDonell Douglas* decision and its progeny—to survive summary judgment.

To establish a *prima facie* case of unlawful discrimination under the ADA, a plaintiff must show that: (1) he is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position

8

remained open while the employer sought other applicants or the disabled individual was replaced. *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004). If the plaintiff meets this burden, then the defendant must offer a legitimate explanation for its action. *Id.* If the defendant does, then the plaintiff must introduce sufficient evidence to show that the proffered explanation is pretextual. *Id.* The plaintiff retains the ultimate burden of persuasion at all times. *Id.*

Defendant argues that plaintiff was not qualified for the foreman position, and that defendant had a legitimate, non-discriminatory reason for its actions that were not pre-textual. (Dkt 19 at 26-30.)[2] Defendant cites the job posting itself, which lists the following as the "essential functions" of the job:

> Plans, organizes, directs and coordinates maintenance and
> repair of streets, storm sewers, sanitary sewers, water lines,

---

[2] Defendant does not contest that plaintiff is disabled, and agrees with plaintiff that he cannot lift over fifty pounds, cannot reach above his shoulders, and cannot repetitively use his right arm. However, it is unclear whether plaintiff has established a disability as defined in the ADA or ADA Amendments Act. *See, e.g.*, *Anderson v. Inland Paperboard & Packaging*, 11 F. App'x 432, 437 (6th Cir. 2001) (holding that plaintiff "failed to establish that any major life activities were substantially limited by his shoulder impairment," because there was "no evidence that this injury prevented [plaintiff] from performing 'a class of jobs' or a 'broad range of jobs in various classes'"); *McKay v. Toyota Motor Mfg. U.S.A.*, 110 F.3d 369, 370-71, 374 (6th Cir. 1997) (employee who was restricted from lifting weights of less than ten pounds, pushing or pulling, using vibrating tools, and making repetitive motions with her right hand was not disabled under the ADA). It is not necessary to decide this issue, because plaintiff's claim fails on other grounds.

> hydrants, parkways, and other public works facilities[;]
> Receives and investigates complaints from property owners
> and the public concerning the work of the crews and the
> conditions that need to be repaired[;] Participates in the
> preparation of the annual budget and capital improvement
> program; monitors the budget[;] Maintains inventory of
> supplies and equipment[;] Prepares or approves requisitions
> and specifications for purchases and contractual services[;
> and] Develops preventive maintenance and inspection
> policies and procedures for the maintenance of streets, water
> lines, sewers, hydrants, valves, pumps, and other public
> works and utility facilities.

(Dkt. 19-6 at 2-3.)

Defendant also notes that the person who was selected for the position had "15 years of experience in the Water Department and 7 years of experience in the Department of Public Service," as well as holding "an S-2 certification from the State of Michigan." (Dkt. 19 at 27.) Defendant argues that as a "building maintenance" employee with "minimal experience working in the Water Department," plaintiff's skills were "simply not in line with the position." (Id.)

Plaintiff argues that he was in fact qualified, and notes that defendant "cited to NO testimony illustrating that [p]laintiff was not qualified for the position." (Dkt. 22 at 13.) But it is plaintiff's burden to

10

show that he was qualified, not defendant's burden to show that he was not. *See Hedrick*, 355 F.3d at 453.

Plaintiff notes that "<u>two</u> employees were promoted as to the job posting for only <u>one</u> position." (Id. (underline in original).) And plaintiff testified in his deposition that the union steward told him that HR Director Wood "stated that [p]laintiff <u>would be</u> allowed to interview for the position, gave [p]laintiff a time limit, and [p]laintiff turned in his application on time." (Id. at 14 (citing Dkt. 19-2 at 13 (plaintiff's deposition)) (underline in original).)[3] Plaintiff also testified that he had never been assigned to the Water Department or worked there full time, but had "worked in the Water Department a few times on overtime." (Dkt. 19-2 at 15.) Finally, plaintiff cites his own affidavit for the proposition that when he "reviewed the posting for the position [he] saw nothing in the job description that would disqualify [him] from eligibility except possibly reaching over [his] head." (Dkt. 22-4 at 2.)

---

[3] It is unclear whether the double-hearsay statement from HR Director Wood is admissible evidence. "As a general rule, 'evidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded.'" *Beckett v. Ford*, 384 F. App'x 435, 442 (6th Cir. 2010) (quoting *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007)). Even if HR Director Wood's statement might be excluded from hearsay as an opposing party's statement, Fed. R. Evid. 801(d)(2), there is no reason to think that Kyle Major's statement about what HR Director Wood said could similarly be attributed to defendant.

According to plaintiff, this evidence is sufficient that "it can be inferred that [p]laintiff was qualified for the position." (Dkt. 22 at 14.)

Plaintiff's own conclusory assertions are insufficient to establish that he was "otherwise qualified" for the position under the *McDonnell Douglas* framework. *See, e.g.*, *Knapp v. City of Columbus*, Nos. C2-CV-01-255, C2-CV-02-1221, C2-CV-04-203, 2005 U.S. Dist. LEXIS 42897, at *35 (S.D. Ohio Feb. 16, 2005) ("[C]onclusory statements[, such as providing] that he is a qualified individual with a disability as defined by the ADA . . . . are insufficient as a matter of law and are insufficient to avoid summary judgment."); *Anthony v. United Tel. Co.*, 277 F. Supp. 2d 763, 773 (N.D. Ohio 2002) ("In support of her claim that she was qualified for these positions, [plaintiff] relies only on her own affidavit . . . . [Her] conclusory statement, however, is not sufficient evidence from which a trier of fact could conclude that she was qualified for these positions."); *Kleiber v. Honda of Am. Mfg.*, 420 F. Supp. 2d 809, 825 (S.D. Ohio 2006) ("Plaintiff's own personal observations and conclusory opinions that he could perform work at Honda are not enough to withstand summary judgment in the face of evidence to the contrary."); *see also Boback v. GMC*, No. 95-3836, 1997 U.S. App. LEXIS 297, at *11

(6th Cir. Jan. 3, 1997) ("[Plaintiff] offers only his personal observation that he could perform such work. . . .  Accordingly, because [plaintiff] has failed to establish that he was a 'qualified individual with a disability' with respect to these three positions, the district court properly granted summary judgment in favor of the Defendants.").

Because plaintiff fails to set forth sufficient evidence from which a trier of fact could find that he was "otherwise qualified" for the Water Department Foreman position, he has not met his burden and his discrimination claim is dismissed.

### b. Pre-EEOC filing retaliation claim

Plaintiff claims that defendant retaliated against him by (a) declining to post the announcement or interview him for the Water Department Foreman position and (b) eliminating his position in the Parks and Recreation Department and transferring him to City Hall. Plaintiff claims that defendant did so because he had testified in Cassandra Parks' case in 2012 and because he had complained to defendant that defendant had discriminated against him based on his disability.

13

To establish a *prima facie* case of retaliation under Title VII, plaintiff must establish that: "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014).

Defendant argues that plaintiff's pre-EEOC filing retaliation claim fails because his reassignment to City Hall was not a "materially adverse" action, and in any case he cannot establish a causal connection between his testimony in Cassandra Parks' case in 2012 and the decision to transfer him in early 2014. (Dkt. 19 at 30-35.) Plaintiff responds that his transfer to City Hall, the failure to post the announcement in his workplace or interview him for the Water Department Foreman position, and his termination were all adverse employment actions. (Dkt. 22 at 23-24.)[4]

---

[4] Plaintiff's response deals with both the pre-EEOC filing and post-EEOC filing claims together, and it is often unclear in the response which argument applies to which claim. Count II of plaintiff's amended complaint (the pre-EEOC filing retaliation claim) only lists his transfer to City Hall and the failure to post or interview plaintiff for the foreman position as the adverse actions taken by

14

First, defendant's decision to transfer plaintiff to City Hall was not a "materially adverse" employment action for purposes of the ADA. "Reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions." *Policastro v. Nw. Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002). Here, the only change in the conditions of plaintiff's employment was that the hours for his new position were 7:30 AM to 4:00 PM rather than 6:00 AM to 2:30 PM, which were his hours when he was in the Parks and Recreation Department. Although plaintiff testified that he would no longer be able coach football, he also testified that he was not coaching football at the time. (*See* Dkt. 19-2 at 6, 19.) Under these circumstances, a trier of fact could not find that this change would "deter a reasonable employee from complaining about discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 69 (2006).

Plaintiff argues that defendant transferred him to City Hall intending to put him in direct contact with Mensinger and force him to quit. (Dkt. 22 at 19-20, 31-32.) But even if plaintiff subjectively felt that to be the case, plaintiff fails to set forth sufficient evidence that

---

defendant. (Dkt. 11 at 9-12.) Thus plaintiff's termination is not considered for the purposes of this claim.

putting him in contact with Mensigner was a materially adverse term or condition of employment.  The standard is whether a "*reasonable employee would have found the challenged action materially adverse.*" *Burlington N. & Santa Fe Ry.*, 548 U.S. at 68 (emphasis added).  "At most, [p]laintiff offers h[is] testimony that []he feared or did not like certain coworkers; but this is not the type of conduct Title VII is designed to redress."  *See Goodsite v. Norfolk S. Ry.*, 573 F. App'x 572, 584 (6th Cir. 2014).  Even assuming that plaintiff's subjective concern was objectively reasonable, plaintiff's refusal to meet with supervisors to discuss his concern is not the "reaction[] of a *reasonable* employee." *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).

And plaintiff cannot show that declining to post the job announcement in his workplace or interview him for the Water Department Foreman position was a materially adverse employment action, because as set forth above, plaintiff fails to establish that he was qualified for the position.  It is difficult to see how depriving plaintiff of notice or the opportunity to interview for an open position, if true, was a materially adverse employment action if plaintiff cannot establish that he was otherwise qualified for that position.  *See, e.g.*, *Moore v. Abbott*

*Labs.*, 780 F. Supp. 2d 600, 617 (S.D. Ohio 2011) (rejecting plaintiff's argument that "failure to interview him constituted disparate treatment," in part because it was "undisputed that [he] lacked the requisite . . . experience"). Just as a "failure to promote" discrimination claim requires the plaintiff to be "qualified for the promotion," *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000), a defendant's action underlying a "failure to promote" retaliation claim can only be materially adverse if plaintiff were otherwise qualified for the position.

Even if plaintiff had established that he were qualified for the Water Department Foreman position, he fails to set forth sufficient evidence that the relevant decisionmakers knew that he had engaged in protected activity by testifying in Cassandra Parks' Title VII case.[5] Plaintiff cites a recorded conversation purportedly between him and Mensinger, in which Mensinger "specifically stated that [defendant] was going to retaliate against [p]laintiff because of his testimony[,]

---

[5] Only plaintiff's testimony in the Cassandra Parks lawsuit may be considered protected activity with regard to the claim that defendant retaliated against him by declining to post the job announcement in his workplace or interview him for the foreman position. A claim of retaliation for engaging in the protected activity of complaining about an incident of unlawful discrimination cannot be based on the act of discrimination that was supposed to have caused the retaliation. That is, plaintiff cannot claim that he was first discriminated against, then that the discrimination was also retaliation for complaining about the discrimination.

which was adverse to [defendant] in the Cassandra Parks' [*sic*] lawsuit." (Dkt. 22 at 24.)

But plaintiff testified that HR Director Wood and DPS Director Morton were not employees at the time plaintiff testified in Cassandra Parks' suit in 2012. (Dkt. 19-2 at 9-10.) And plaintiff testified that he did not "have any knowledge or information or reason to believe that" City Administrator Folks, Director of Public Works Tom Wilson, Emergency Manager Parker, or HR Director Wood "were aware of [plaintiff's] testimony" in the Cassandra Parks case. (Dkt. 19-2 at 9-10.) Even accepting that he engaged in protected activity, it is plaintiff's burden to establish that "his exercise of such protected activity was known by the defendant." *Laster*, 746 F.3d at 730. Because plaintiff fails to set forth evidence that the relevant decisionmakers were aware of his testimony, plaintiff fails to meet his burden.

Plaintiff fails to set forth sufficient evidence for a trier of fact to find that his transfer to City Hall or the decision not to post about or interview him for the foreman position were "materially adverse" actions. Moreover, plaintiff fails to set forth sufficient evidence for a trier of fact to find that the relevant decisionmakers were aware that he

18

had testified in Cassandra Parks' Title VII case.  The pre-EEOC filing retaliation claim must therefore be dismissed.

### c. Post-EEOC retaliation claim

Plaintiff claims that defendant terminated him in retaliation for filing a charge of discrimination with the EEOC, in which plaintiff complained that he had been "denied a promotion" to Water Department Foreman "due to [his] disability."  Defendant argues that there is no causal connection between plaintiff's EEOC complaint and his termination.  (Dkt. 19 at 35-36.)  Plaintiff responds that the causal connection is evidenced by the timing of his termination "[w]ithin about 45 days of the filing of t[he] EEOC complaint," City Administrator Folks' testimony in which plaintiff argues she lied about whether she knew of his work restrictions,[6] Emergency Manager Parker's "practice of retaliation" as shown by other cases, City Administrator Folks' claim that "she did not understand the question" when asked if she were "part of [plaintiff]'s position being eliminated," and City Administrator Folks'

---

[6] Specifically, plaintiff argues that "[i]f Ms. Folks did not retaliate against [plaintiff] because he filed his EEOC complaint, she would have no reason to disguise the fact that she was aware of [plaintiff's] work restrictions."  (Dkt. 22 at 26-27.)

19

general refusal to legitimately respond to plaintiff's safety concerns regarding Mensinger. (Id. at 24-37.)

Viewing the evidence in the light most favorable to plaintiff, it is difficult, if not impossible, to understand how the cited testimony of City Administrator Folks is evidence that defendant acted with a retaliatory motive when terminating plaintiff. Assuming that City Administrator Folks lied about whether she was aware of plaintiff's work restrictions and whether she was a part of the decision to eliminate plaintiff's position at the Parks and Recreation Department, such evidence is unrelated to whether defendant was motivated to terminate plaintiff based on plaintiff filing a charge of discrimination with the EEOC.

And as set forth above, plaintiff did not act in an objectively reasonable manner regarding his safety concerns. Even if it were reasonable for plaintiff to fear for his safety, given his history with Mensinger, it was unreasonable to refuse to meet with his supervisors to address those concerns. Assuming that the temporal proximity between plaintiff filing the charge of discrimination with the EEOC and plaintiff's termination would give rise to an inference of unlawful

20

retaliation, plaintiff's subsequent decision not to report to work negates such an inference. "[A]n intervening legitimate reason to take an adverse employment action dispels an inference of retaliation based on temporal proximity." *Kuhn v. Washtenaw County*, 709 F.3d 612, 628 (6th Cir. 2013).

Plaintiff unreasonably refused to return to work after filing his charge of discrimination with the EEOC, and he has not refuted the evidence of defendant's legitimate reason to terminate his employment. Plaintiff's post-EEOC claim of retaliation must therefore be dismissed.

## IV.   Conclusion

For the reasons set forth above, defendant's motion for summary judgment (Dkt. 19) is GRANTED.

IT IS SO ORDERED.

Dated: July 5, 2016          s/Judith E. Levy
Ann Arbor, Michigan          JUDITH E. LEVY
                             United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's

ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 5, 2016.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager